1134

Lyndon H. LAROUCHE, Jr., Appellants,
v.
NATIONAL BROADCASTING COMPA-
NY, INC.; Anti-Defamation League of
B'Nai B'Rith; Brian Ross; Pat Lynch;
Mark Nykanen and Irwin Suall, Appel-
lees,
and
Abbott Rosen; Dennis King; Chip
Berlet and John Does 1, 2 and 3,
Defendants.

Lyndon H. LAROUCHE, Jr.,
and
Michael F. Dennis, Appellee,
Intervenor,
v.
NATIONAL BROADCASTING COMPA-
NY, INC.; Abbott Rosen; Dennis King;
Chip Berlet; Brian Ross; Pat Lynch;
John Does 1, 2 and 3 and Mark Nyka-
nen, Defendants,
and
Anti-Defamation League of B'Nai
B'Rith and Irwin Suall,
Appellants.

Lyndon H. LAROUCHE, Jr., Appellant,
v.
NATIONAL BROADCASTING
COMPANY, INC., Appellee,
and
Anti-Defamation League of B'Nai B'Rith;
Abbott Rosen; Dennis King; Chip Ber-
let; Brian Ross; Pat Lynch; John Does
1, 2 and 3; Mark Nykanen and Irwin
Suall, Defendants.

Lyndon H. LAROUCHE, Jr., Appellant,
v.
NATIONAL BROADCASTING
COMPANY, INC., Appellee,
and
Anti-Defamation League of B'Nai B'Rith;
Abbott Rosen; Dennis King; Chip Ber-
let; Brian Ross; Pat Lynch; John Does
1, 2 and 3; Mark Nykanen and Irwin
Suall, Defendants.

Nos. 84-2327(L), 84-2371, 85-1340
and 85-1265.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 8, 1985.
Decided Jan. 9, 1986.
Rehearing and Rehearing En Banc
Denied Feb. 24, 1986.

Robert L. Rossi (Odin P. Anderson, Anderson & Associates, P.C., Boston, Mass., on brief), for appellant/cross-appellee.

M. Elizabeth Medaglia (Jackson & Campbell, P.C., Washington, D.C., on brief), for intervenor/appellee Dennis.

Floyd Abrams (Thomas J. Kavaler, Devereux Chatillon, Ellen Rosen, Cahill, Gordon & Reindel, New York City, Peter K. Stackhouse, Tolbert, Smith, Fitzgerald & Ramsey, Arlington, Va., on brief), and Wayne H. Matelski (Rodney F. Page, Barbara S. Wahl, Craig Iscoe, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., on brief), for appellees/cross-appellants.

Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

These appeals arise from an action filed by Lyndon LaRouche against NBC, the Anti-Defamation League of B'Nai B'Rith (ADL) and others. LaRouche alleged that the defendants conspired to, and did, defame him in two NBC television broadcasts. NBC filed a four count counterclaim alleging, *inter alia*, that LaRouche had interfered with its business relations. NBC prevailed on the defamation claim and on its counterclaim for interference with business relations. On that counterclaim, the jury awarded NBC $2,000 in actual damages and $3,000,000 in punitive damages. The punitive damages were reduced to $200,000 on remittitur, which NBC accepted. After the trial, the ADL moved for sanctions against LaRouche and his lawyers pursuant to Rule 11, Fed.R.Civ.P. The district court denied this motion.

On appeal LaRouche presents four issues. First, whether the district court erred in denying him judgment n.o.v. as to the counterclaim. Second, whether the district court erred in refusing to compel discovery of NBC's confidential sources. Third, whether the district court erred in permitting NBC to rely at trial upon evidence from these confidential sources which it refused to disclose. Fourth, whether the district court erred in refusing to declare a mistrial on the ground that the jury had been improperly influenced. The ADL also appeals alleging error in the district court's denial of its motion for sanctions against LaRouche and his lawyers. Finding no error, we affirm.

## I

Lyndon LaRouche bases his claim for defamation upon two news stories which NBC broadcast about him and his organization. The first story was broadcast during the "Nightly News" program of January 30, 1984, the second, during the "First Camera" program of March 4, 1984. "First Camera" was a prime time weekly news magazine type program and that broadcast is at the heart of this action.

The "First Camera" story was produced by defendant Pat Lynch, an NBC employee. In the story, NBC published statements to the effect that LaRouche believes that Jews are responsible for all the evils in the world, that any serious investigation of the LaRouche organization by the IRS would lead to criminal indictment, and that

LaRouche once proposed the assassination of President Carter and several of his aides.

On January 30, 1984, during the preparation of the "First Camera" story, Lynch went to LaRouche's residence in an attempt to gain an interview with him. While she was there, a LaRouche security guard removed her camera crew's schedule from the NBC van and read the contents of the schedule into a walkie-talkie. According to the schedule, Lynch and her crew were to interview Senator Daniel Patrick Moynihan later that afternoon.

When Lynch returned to the NBC Washington office around midday, her research assistant Kathi Paterno told her that Senator Moynihan's office had called and cancelled the interview. While Lynch was in the office, Paterno received another call from someone claiming to be Senator Moynihan's aide. Under the guise of reconsidering the cancellation, the caller solicited, and received, information about whom NBC had contacted in the course of the story about LaRouche. Becoming suspicious, Lynch rang off and called Senator Moynihan's office only to learn that someone purporting to be from NBC had called the Senator's office and cancelled the interview. Senator Moynihan's office had not called NBC. The interview did take place that afternoon as originally scheduled. That same day a release appeared on LaRouche campaign letterhead bearing the dateline, "Washington, D.C. January 30". It stated: "According to today's NBC–TV log, Pat Lynch and her NBC–TV roving camera crew have an appointment to do a filming in the Senate offices of Senator Pat Moynihan at 5:15 p.m. this afternoon." NBC's counterclaim for interference with business relations rises from these events.

This action was filed on February 10, 1984. Early in discovery, LaRouche moved to compel NBC to disclose the confidential sources of its story. A U.S. Magistrate heard and denied the motion because LaRouche had not exhausted other possible sources of this information. Shortly before the discovery and pretrial motion cutoff date, LaRouche renewed his motion to compel discovery of the confidential sources. Although he had taken several depositions since his earlier motion, there were some obvious sources of information to which he had not applied. A former LaRouche associate, Larry Cooper, the revealed source of the Carter assassination story was not deposed. Gordon Novel, a confidential source who had come forward during the litigation, had not been deposed, though his deposition had been noticed. In addition, the following statement was published in *New Solidarity*, a LaRouche publication:

> NBC argued that it needs to protect the confidentiality of its sources from disclosure to LaRouche and his staff. The absurdity of this contention is shown by the fact that the names of all of NBC's principal sources were known to LaRouche well before the subject broadcasts and were widely publicized. *New Solidarity*, May 14, 1984 at 5.

The district court denied LaRouche's motion again on the ground that LaRouche had not exhausted alternative sources of information.

Before trial, LaRouche moved the court to preclude NBC from relying at trial on information from confidential sources. The district court denied the motion, ruling that NBC could rely on information received from confidential sources who had appeared on the broadcast in disguised form and from those sources who did not appear on camera.

On the third day of trial, *The Washington Post* printed an article concerning an alleged death threat to defendant Pat Lynch, who was then in the process of testifying. LaRouche moved for a mistrial. The district court polled the jury and found that two jurors had seen the article. The court interviewed these jurors individually and out of the presence of the rest of the jury to determine if they had been influenced by the article. Satisfied that these jurors were not so influenced the district court permitted the trial to continue over LaRouche's objections.

The next day the jury expressed concern in a note to the judge over the presence of a *New Solidarity* sketch artist in the courtroom. Again a *voir dire* was conducted to determine whether the artist's presence, or anything else, was causing the jurors to fear. Juror Kelly testified that she feared for her personal safety. The court questioned her closely and determined that her fears were not the result of any outside influence, but from evidence of alleged harassment carried out by the LaRouche organization against its perceived enemies. She was excused. Alternate juror Fewel expressed concern over the presence of the sketch artist in the courtroom. She did not testify that she was afraid, only that she did not like the sketch artist being there. Alternate juror Fewel was not excused, neither did she participate in any jury deliberations. Again LaRouche moved for a mistrial or for additional questioning. This motion was denied.

The jury found for NBC and the ADL on LaRouche's case in chief, for defamation. On NBC's counterclaim for interference with business relations, the jury awarded NBC $2,000 in actual damages and $3,000,000 in punitive damages. LaRouche moved for judgment *non obstante verdicto*, a mistrial, and remittitur. The district court denied the first two motions, but granted remittitur to $200,000 on the punitive damages, which NBC accepted.

After judgment was entered, the ADL moved for sanctions in the form of attorney's fees and costs against LaRouche and his lawyers. These sanctions were sought under Rule 11, Fed.R.Civ.P.; the inherent powers of the court; and 28 U.S.C. § 1927 (1982). Discovery had turned up an internal memorandum of the LaRouche organization which ordered LaRouche followers all over the country to sue the ADL whenever possible. The ADL saw this memo as evidence that the instant action was brought in bad faith. The district court disagreed and denied the ADL's motion.

LaRouche alleges four errors in the district court's denial of his motions: for judgment n.o.v. on NBC's counterclaim for interference, to compel discovery of NBC's confidential sources, to preclude NBC from relying at trial on information from confidential sources, for further *voir dire* and mistrial. The ADL appeals from the district court's denial of its motions for sanctions.

## II

LaRouche claims error in the district court's refusal to grant judgment n.o.v. on NBC's counterclaim for interference with business relations. The evidence, LaRouche maintains, is legally insufficient in two respects. First, there is no evidence of a breach in NBC's relationship with Senator Moynihan, and such a breach, LaRouche argues, is a necessary element of the tort. Second, there is no evidence of injury to NBC by the alleged interference, injury being another necessary element. These arguments are without merit.

Virginia recognized the tort of intentional interference with business relations in the case of *Glass v. Glass*, 228 Va. 39, 321 S.E.2d 69 (1984). In that case the Virginia Supreme Court defined the elements of this cause of action as follows:

(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff. (Citations omitted).

321 S.E.2d at 77.

We may reverse a jury verdict only when there is a complete absence of facts to support the conclusions reached by the jury. *Sherrill White Construction, Inc. v. South Carolina National Bank*, 713 F.2d 1047, 1050 (4th Cir.1983) (citations omitted).

LaRouche argues that the third element of this tort, as set forth in *Glass*, *supra*, implies that there must be a breach in the relationship. This is not correct. The third element of this tort is intentional

misconduct which is the proximate cause of the fourth element, injury. Certainly there is sufficient evidence in the instant case for a jury to find that LaRouche intentionally engaged in misconduct which interfered in NBC's relationship with Senator Moynihan.

 LaRouche further argues that since the interview took place as scheduled, NBC suffered no injury. While the harm NBC may have suffered is slight, there is evidence of the confusion created over the Moynihan interview and the effort necessary to straighten it out. From these facts the jury could have found some injury.

### III

 LaRouche charges error in the district court's refusal to compel NBC to disclose confidential sources and in its refusal to preclude NBC from relying on those sources at trial. We find no error. A motion to compel discovery is addressed to the sound discretion of the district court. *Tiedman v. American Pigment Corporation*, 253 F.2d 803, 808 (4th Cir.1958). This remains true even when the object of that discovery is a journalist's confidential source. *Baker v. F & F Investments*, 470 F.2d 778, 781 (2d Cir.1972). In determining whether the journalist's privilege will protect the source in a given situation, it is necessary for the district court to balance the interests involved. *Branzenburg v. Hayes*, 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1972) (Powell, J., concurring). To aid in the balancing of these interests, courts have developed a three part test: (1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, *modified*, 628 F.2d 932 (5th Cir.1980), *cert. denied* 450

U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981).

 In denying LaRouche's motions, the district court grounded its decision on the fact that LaRouche had not exhausted reasonable alternative means of obtaining this same information.[1] LaRouche did not depose Larry Cooper, the public source of the Carter assassination story. He did not exhaust all his non-party depositions before making the motion, and he failed to demonstrate to the court unsuccessful, independent attempts to gain the requested information. In fact, *New Solidarity*, a LaRouche publication, claimed that LaRouche already knew the names of all of NBC's principal sources well before the two reports were broadcasted. Under these circumstances, we find no abuse of discretion in the district court's denial of LaRouche's motions to compel discovery of confidential sources and to preclude reliance at trial upon information from those sources.

### IV

LaRouche urges error in the failure of the district court to declare a mistrial in the face of potential outside influence on the jury, or at least to conduct a more extensive *voir dire* of the jury. Two incidents during trial give rise to the alleged error.

The first incident was the article in the *Washington Post* concerning an alleged death threat to Pat Lynch. This court has explained the appropriate procedure for a district court to follow in such an instance.

Thus, the procedure required by this Circuit where prejudicial publicity is brought to the court's attention during a trial is that the court must ascertain if any jurors who had been exposed to such publicity had read or heard the same. Such jurors who respond affirmatively must then be examined, individually and outside the presence of the other jurors,

---

1. As an alternative ground for decision, the trial judge noted that the magistrate's denial of the motion to compel disclosure was not clearly erroneous. Because the motion before the district court was a renewed motion, not a motion for reconsideration of a magistrate's order, use of the "clearly erroneous" standard was incorrect. *See* 28 U.S.C. § 636(b)(1)(A) (1982) ("clearly erroneous" standard applies to reconsideration of magistrate's orders). A de novo determination of a failure to exhaust was made, however. Consequently, the district court's error is not dispositive.

to determine the effect of the publicity. However, if no juror indicates, upon inquiry made to the jury collectively, that he has read or heard any of the publicity in question, the judge is not required to proceed further. (Citations omitted). *United States v. Hankish*, 502 F.2d 71, 77 (4th Cir.1974).

■ In the case at bar, the district court properly followed these procedures. The jurors who indicated they had seen the *Post* article were questioned individually, outside the presence of the jury. The district court satisfied itself that there was no need to resort to any of the corrective measures available.

■ The second incident occurred when the jury expressed concern, in a note to the judge, over the presence of a sketch artist in the courtroom. Again, *voir dire* was conducted to determine whether the artist's presence, or anything else, was causing fear among the jurors. One juror testified that she feared for her life. The court questioned her closely as to the source of her fear. She testified that it stemmed not from information she had received from an outside source, but from testimony regarding harassment allegedly carried out by the LaRouche organization against its enemies. The juror was excused.

LaRouche contends that an alternate juror should have been excused. The alternate juror testified that she did not like the sketch artist being able to draw her, but she did not express any particular fear. The district court decided not to excuse this juror, and she did not participate in the jury's deliberations.

In the instant case, the district court followed the teaching of *Hankish* and we find no abuse of discretion in its refusal to declare a mistrial or to conduct more extensive *voir dire*.

## V

The ADL appeals the district court's denial of its motions for sanctions against LaRouche and his lawyers. This motion was founded upon Rule 11 Fed.R.Civ.P.; the inherent powers of the court, and 28 U.S.C. § 1927.

■ Attorneys fees may be awarded against a losing party who has "acted in bad faith, vexatiously, wantonly or for oppressive reason." *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed..2d 141 (1975). This bad faith exception may be applied to counsel as well as to litigants. *Roadway Express v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Whether to impose such sanctions can best be decided by the district court, which has first hand knowledge of counsel's conduct in the course of the action. Deference is, therefore, accorded the judgment of the district court, and it will not be reversed but for abuse of discretion. *Nelson v. Piedmont Aviation*, 750 F.2d 1234 (4th Cir.1984). On the basis of the record, we find no abuse of discretion in the district court's denial of this motion, and we affirm.

AFFIRMED.