Robert CUILLO, individually and as the former Regional Bailli southeast USA, Glen King Parker, individually and as the former Bailli de Fort Lauderdale, and Joanne Cuillo, individually and as the former Bailli de Palm Coast, Plaintiffs,

v.

Larry SHUPNICK, Howard I. Halpern, Frank Cava, John S. Duarte, III, Joseph M. Girard, Doyle N. Rogers, M.D., Anthony J. LaBarba, Harry L. Breslau, Jules I. Epstein, Louis Blacher, individually and as members of the Board of Directors of the Confrerie de la Chaine des Rotisseurs, Ltd., and the Confrerie de la Chaine des Rotisseurs, Ltd., Defendants.

No. 92 Civ. 2569 (RWS).

United States District Court,
S.D. New York.

March 11, 1993.

As Amended April 23, 1993.

Axelrod, Cornachio & Famighetti, Mineola, NY, for plaintiffs; Joseph P. Famighetti, of counsel.

Hall, Dickler, Lawler, Kent & Friedman, New York City, for defendants; Wendy L. Ravitz, of counsel.

### OPINION

SWEET, District Judge.

The Defendants, all members of the Board of Directors of the Confreries de la Chaine des Rotisseurs, Ltd. ("La Chaine")[1] have moved to dismiss the claims of the Plaintiffs, all members and former members of La Chaine,[2] of malicious prosecution, abuse of process, and violation of their rights under the First and Fourteenth Amendments, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. For the reasons given below, the Defendants' motion is hereby granted.

*Facts*

■ On a motion to dismiss, the facts are alleged by the Plaintiffs are assumed to be true, *Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992), and as set forth below do not represent any findings of fact by this Court.

La Chaine is a non-profit corporation organized under the laws of New York to promote, foster and encourage the culinary arts. "Rotisseur" means cook (or more precisely "roaster") in French, and the organization itself is an affiliate of a culinary "confrerie" in France of the same name.[3] La Chaine's national chapters (known as "Balliages") are divided up by geographic region, each of which is presided over by a Regional Bailli. La Chaine's Board of Directions, accordingly, is comprised of individuals who reside all over the country; in this action, the Plaintiffs are domiciled in Florida and Washington,

and the defendants are domiciled in California, New York, Texas, Georgia, New Jersey, Louisiana, and Illinois.

On October 20, 1989, the Board of Directors of La Chaine appointed a committee to redraft and amend the by-laws of the institution. Plaintiff Robert Cuillo ("Cuillo") was one of the four Directors of La Chaine appointed to this committee; the other three, Doyle Rogers ("Rogers"), Joseph M. Girard ("Girard"), and Jules I. Epstein ("Epstein"), have been named as Defendants in this lawsuit. The Committee drew up a revised set of by-laws, but only over the objections of Cuillo.

When the Committee reported that the revised by-laws were ready, Cuillo requested that Girard not circulate the new by-laws. Cuillo believed these were not in compliance with the New York Not–for–Profit Corporation law, since they permitted only existing Directors, not the general membership, to vote for the election of the Board of Directors at La Chaine's annual meeting. After Girard refused to halt the circulation of the new draft, Cuillo called Larry Shupnick ("Shupnick"), acting National President of La Chaine; to ask him not to distribute the by-laws to the Board. When Shupnick failed to respond, Cuillo and the other Plaintiffs circulated a letter on November 22, 1989, to the general members of La Chaine advising all of the alleged deficiencies in the revised by-laws.

Certain members of the Board responded with letters of their own, also addressed to all the members of La Chaine, which purportedly contained false accusations against the Plaintiffs. The Board itself scheduled a special meeting to expel the Plaintiffs from La Chaine. The Plaintiffs attempted to block this move by getting a TRO in New York Supreme Court which prohibited the

---

1. They are: Larry Shupnick, Howard I. Halpern, Frank Cava, John S. Duarte, II, Alfred Rosenthal, Joseph M. Girard, Doyle N. Rogers, M.D., Anthony J. LaBarba, Harry L. Breslau, Jules I. Epstein, Louis Blacher, and Robert Uttal.

2. The Plaintiffs are Robert Cuillo, Joanne Cuillo, Benjamin Ichinoise, and Glen King Parker.

3. The French La Chaine des Rotisseurs was founded in 1950 and is dedicated to the same goals as its American counterpart, although it was also created to promote the use of the meat-roasting spit which "by its neat and straightforward operation is the symbol of true French cookery." *Larousse Gastronomique* 298 (Jenifer Harvey Lang, ed., Eng. ed. 1988).

removal of the plaintiffs from membership in La Chaine; however, on December 21, 1989, Justice David Saxe ("Justice Saxe") of the New York Supreme Court vacated the TRO. The Board held another special meeting on January 4, 1990, and promptly terminated the Plaintiffs' memberships for "irresponsibility, improper and unbecoming conduct" based on the letter to the general members criticizing the new by-laws and on the fact they had instituted litigation against La Chaine. The Board did appoint a review committee and told the Plaintiffs they could apply through it for reinstatement.

The Plaintiffs objected to the composition of the review committee (especially since it included Rogers, who had been on the original committee which drafted the new by-laws), and concluded that any application for reinstatement through it would be futile. Instead, on April 11, 1990, the Plaintiffs instituted an Article 78 proceeding in New York to review the process by which they were expelled and to mandate their reinstatement. They named as defendants the individual members of the Board of Directors of La Chaine, including Shupnick, Girard, Rogers, and Epstein. The Defendants served an Answer and Counterclaims on January 16, 1990, which included causes of action for malicious prosecution, abuse of process, and defamation.

The Plaintiffs moved to dismiss the counterclaims, which was granted by an order dated July 3, 1990, from Justice Saxe. He dismissed the Defendants' action for malicious prosecution on the grounds that the underlying action had not yet been decided in favor of the Defendants. He dismissed the action for abuse of process on the grounds that the Defendants could not show that process had been abused or used for any ulterior purpose. He dismissed the defamation claim on the grounds that the Plaintiffs' letter to the general membership of La Chaine dated November 22, 1989, was an expression of mere opinion made in the context of a political dispute. Finally, the order reinstated the Plaintiffs with full rights and privileges pursuant to their Article 78 petition. Over a year later, in the spring of 1992, Plaintiffs then filed this action in Federal court alleging in turn malicious prosecution, abuse of process, and violation of their constitutional rights on the part of the Defendants.

*Malicious Prosecution*

In their Answering Affidavit in Opposition to Defendant's Motion to Dismiss, the Plaintiffs consent to the dismissal of their first cause of action (malicious prosecution), on the grounds that it is time-barred by the one-year statute of limitations in CPLR § 215(3) (McKinney 1992).

*Prima Facie Tort*

The Plaintiffs have also mentioned *prima facie* tort in their Memorandum of Law in Opposition, although they have not alleged it as a count in their complaint. A *prima facie* tort (unjustified harm intentionally inflicted) exists only where no traditional tort is appropriate; once a traditional tort is established, the harm complained of is used to support that charge, and the *prima facie* tort claim disappears. *Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984). Since the harms which the Plaintiffs complain of are fully covered by their other causes of action, no adequate claim of *prima facie* tort may be alleged here. Additionally, an allegation of *prima facie* tort also requires allegation of special damages which the Plaintiffs have not made. *Id.*

*Abuse of Process*

Defendants allege that the Plaintiffs' second cause of action, for abuse of process, is time-barred by a one-year statute of limitations and by the fact that an initial pleading, as a matter of law, cannot give rise to an abuse of process claim. The Plaintiffs respond that, because abuse of process is not specifically listed as an intentional tort governed by the one-year statute of limitations set forth in CPLR § 215(3) for intentional torts, it is governed by the three-year statute of limitations for all torts which are "injuries to the person or to property" found in CPLR § 214(5).

CPLR § 214, which governs actions covered by a three-year statute of limitations, lists actions to recover damages for an injury

to property or for personal injury among several other items. CPLR § 215, which governs actions covered by a one-year statute of limitations, lists

> (3.) an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law,

among other actions, such as actions against certain state or county officials. All the actions listed in CPLR § 215(3) are intentional torts, though the section itself does not include this term.

The Plaintiffs have cited two cases in their favor, *Levine v. Sherman*, 86 Misc.2d 997, 384 N.Y.S.2d 685 (N.Y.Sup.Ct.1976), noted in passing by *Pico Prods. v. Eagle Comtronics*, 96 A.D.2d 736, 465 N.Y.S.2d 628 (4th Dep't 1983). *Pico* does not examine the issue, but the court in *Levine* states that although "logic might suggest that we include abuse of process with the one-year actions it resembles" the CPLR "offers a complete list of the one-year actions." 86 Misc.2d 997, 999, 384 N.Y.S.2d 685, 684. Since only the legislature could add to the list, the court reasoned, it was constrained to include abuse of process actions under the three-year statute of limitations prescribed for personal injury.

Although the Court of Appeals has never spoken on the issue, in the time since *Levine* was decided the Appellate Divisions of the First, Second, and Third Departments have held that abuse of process is governed by a one-year statute of limitations as an intentional tort. In *Bittner v. Cummings*, 591 N.Y.S.2d 429, 430 (2d Dep't 1992), the court wrote:

> The operative distinction between causes of action governed by the one-year Statute of Limitations (CPLR 215), and those within the scope of the three-year Statute of Limitations (CPLR 214(5)) is whether the cause of action sounds in an intentional tort or sounds in negligence.... Abuse of process and malicious prosecution are both intentional torts which are governed by CPLR 215, the one-year statute of limitations.

In *Gallagher v. Directors Guild of Am., Inc.*, 144 A.D.2d 261, 533 N.Y.S.2d 863 (1st Dep't 1988), the court easily concluded that the one-year statute applied, and wrote, "[i]t appears that every appellate court which has considered the New York statutes at issue here has concluded that a claim for damages for an intentional tort is subject to the one-year limitations period." 144 A.D.2d at 262, 533 N.Y. at 864. After reviewing cases which held torts not on the list in CPLR 215(3) were covered nonetheless by the one-year statute of limitations, the court concluded in *Gallagher* that:

> The operative distinction between the sort of causes of action governed by CPLR 215 and those within the scope of CPLR 214 is whether the particular claim involved is for an intentional tort, or a tort sounding in negligence. Moreover, the reasons for the difference in treatment between the two types of conduct is easily explainable in part by the fact that the harm caused by an unintentional tort frequently may take some time to become apparent whereas the impact of an intentional tort is generally evident immediately.

*Gallagher*, 144 A.D.2d at 263, 533 N.Y.S.2d at 865. *Artzt v. Greenburger*, 161 A.D.2d 389, 555 N.Y.S.2d 127 (1st Dep't 1990); *Nichols v. County of Rensselaer*, 129 A.D.2d 167, 517 N.Y.S.2d 315 (3rd Dep't 1987); and *Hansen v. Petrone*, 124 A.D.2d 782, 508 N.Y.S.2d 500 (2d Dep't 1986). These authorities require dismissal of the abuse of process claim on statute of limitations grounds.

The Defendants also claim that filing and serving an answer and counterclaims does not amount to a process that can be abused. It is well-settled under New York case law that the filing and serving of only a summons and complaint cannot form the grounds for an abuse of process. *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984). In fact, this is the source of the distinction between malicious prosecution and abuse of process: Malicious prosecution consists of causing process to issue in bad faith, while abuse of process is the improper use of process for a collateral purpose after it has been issued. No collateral purpose has been alleged here.

*Violation of Constitutional Rights*

The Plaintiffs state in their Memorandum of Law in Opposition that they have not brought an action under 42 U.S.C. § 1983, although they have failed to allege facts supporting any other legal theory in which the directors of La Chaine managed to violate any of their constitutional rights under the First and Fourteenth Amendments. None of the cases they cite are applicable to their situation. *LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1136 (4th Cir.), *cert. denied,* 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986), concerns only interference with contractual business relations, not with constitutional rights. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) followed *Bivens v. Six Unknown Fed. Narcotic Agents,* 403 US. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) in holding that a cause of action can be implied directly under the Fifth as well as the Fourth Amendment in a case of unlawful sex discrimination by the office of a United States Congressman. Finally, *Laguna Publishing Co. v. Golden Rain Found.,* 131 Cal App.3d 816, 182 Cal.Rptr. 813 (Cal.Ct.App.1982) follows *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) in holding that the California state constitution could provide more expansive rights of free speech than the United States Constitution. Nothing in any of these cases, and nothing added to them by the Plaintiffs, has suggested any facts or theory of law under which the organization La Chaine might lose its voluntary and private character. Given the absence of such a theory, the Plaintiffs' claims of violations of their federal constitutional rights are therefore dismissed.

*Conclusion*

For the reasons stated above, the Defendants' motion to dismiss the Plaintiffs' complaint is granted.

It is so ordered.