**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HURSHEL L. ASHCRAFT, et al.,
<u>Plaintiffs,</u>

v.

CONOCO, INCORPORATED,
<u>Defendant-Appellee,</u>

CORY REISS,
<u>Appellant,</u>

and

KAYO OIL COMPANY; TRIANGLE
FACILITIES, INCORPORATED,
<u>Defendants.</u>

ASSOCIATED PRESS; THE NEWS &
OBSERVER; THE CHARLOTTE
OBSERVER; THE BALTIMORE SUN
COMPANY; RICHMOND TIMES-
DISPATCH; THE MCGRAW-HILL
COMPANIES, INCORPORATED; THE
WASHINGTON POST; GANNETT
COMPANY, INCORPORATED; DOW JONES
AND COMPANY, INCORPORATED; THE
NORTH CAROLINA PRESS ASSOCIATION;
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS,
<u>Amici Curiae.</u>

No. 98-2567

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, Senior District Judge.
(CA-95-187-BR3-7)

Argued: March 1, 1999

Decided: July 6, 2000

Before WIDENER and LUTTIG, Circuit Judges, and
Catherine C. BLAKE, United States District Judge
for the District of Maryland, sitting by designation.

_____

Reversed by published opinion. Judge Blake wrote the opinion, in
which Judge Widener and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Floyd Abrams, CAHILL, GORDON & REINDEL, New
York, New York, for Appellant. Jonathan Drew Sasser, MOORE &
VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Landis C. Best, CAHILL, GORDON & REINDEL, New
York, New York; Stephen T. Smith, MCMILLAN, SMITH &
PLYLER, Raleigh, North Carolina; Mark J. Prak, Harold H. Chen,
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD,
L.L.P., Raleigh, North Carolina; George Freeman, Assistant General
Counsel, THE NEW YORK TIMES CO., New York, New York, for
Appellant. David E. Fox, Andrew B. Cohen, MOORE &
VAN ALLEN, P.L.L.C., Raleigh, North Carolina; George A. Phair,
Senior Counsel, CONOCO, INC., Houston, Texas, for Appellee. Rod-
ney A. Smolla, The T.C. Williams School of Law, UNIVERSITY OF
RICHMOND, Richmond, Virginia, for Amici Curiae.

_____

**OPINION**

CATHERINE C. BLAKE, District Judge:

Cory Reiss, a reporter for the Wilmington, North Carolina, <u>Morn-
ing Star</u> newspaper, appeals from the district court's October 23, 1998
order finding him in civil contempt of court and ordering him to an
indefinite term of imprisonment for refusing to divulge the identities
of certain confidential news sources. We reverse. **1**

_____

**1** Mr. Reiss also appeals the district court's October 13, 1998 order
denying his motion for recusal. Our disposition of the civil contempt

I.

In December 1995, an environmental torts action was filed in the United States District Court for the Eastern District of North Carolina against Conoco, Inc., and two of its subsidiaries (collectively "Conoco"). Conoco was alleged to be responsible for harmful gasoline contamination present in two underground wells located in Wilmington, North Carolina. The lawsuit was brought on behalf of 178 trailer park residents whose drinking water was drawn from the contaminated wells. The initial liability phase of the lawsuit went to trial before a jury in August 1997. On August 25, 1997, the jury returned a verdict in favor of the plaintiffs, finding that Conoco was liable for both compensatory and punitive damages, as well as for $9.5 million in future medical monitoring costs.

Following the verdict, the jury heard additional evidence relating to the amount of the punitive damages award. Before the jury could report the results of its deliberations, however, the parties reached a comprehensive $36 million settlement, the terms of which they intended to remain confidential. Accordingly, the parties jointly moved the district court to file and maintain the settlement agreement and related documents under seal. Without providing public notice or an opportunity for interested parties to object, the district court signed an order granting the motion "for good cause shown" on September 18, 1997. (J.A. 96-97.)[2] The court stated no other findings or reasons supporting its decision to seal the documents. The case was then dismissed, although the district court "retain[ed] jurisdiction for the purpose of managing the Confidential Settlement Agreement." (J.A. 97.)

_____

issue makes it unnecessary for us to resolve this question. In any event, after carefully reviewing the parties' briefs and the record on appeal, we find that the district judge did not abuse his discretion in refusing to recuse himself from the case. See Sales v. Grant , 158 F.3d 768, 781 (4th Cir. 1998) ("A trial judge's denial of a recusal motion is reviewed for abuse of discretion").

**2** The order was entered on the court's docket September 22, 1997. (J.A. 48.)

Mr. Reiss covered the trial for the Morning Star . During July and August 1997, he wrote at least eight stories relating to the case. (See J.A. 239-69.) Using ordinary reporting methods, Mr. Reiss eventually learned the amount of the $36 million settlement through two anonymous sources, both of whom were over 18 years of age. On October 15, 1997, the Morning Star published a story by Mr. Reiss in which the $36 million settlement figure was disclosed. [3] Based on the disclosure of this confidential information, Conoco moved the district court to hold Mr. Reiss, fellow reporter Kirsten B. Mitchell, and the Morning Star in civil contempt. The United States Attorney for the Eastern District of North Carolina also moved the court to hold the three parties in criminal contempt.[4]

The hearing on these contempt motions took place on December 17, 1997. During the hearing, Mr. Reiss refused to disclose the names of the two individuals who had informed him about the $36 million settlement figure. (See J.A. 179-85.) At the close of the hearing, the court found Mr. Reiss not guilty as to the criminal contempt charge. (J.A. 204.) In a subsequent order issued by the district court on January 21, 1998, Mr. Reiss also was found not guilty of civil contempt. (J.A. 315-16.) In the same order, the district court initially denied Conoco's motion to compel Mr. Reiss to disclose the identities of the two sources who had supplied him with the confidential settlement information. (J.A. 317-18.) Applying the test established by this court in LaRouche v. National Broadcasting Company, 780 F.2d 1134,

_____

[3] The story reported that, in addition to the two anonymous sources, "[a] document confirming the settlement amount was among public documents given to a Morning Star reporter . . . by a clerk at the federal courthouse in Raleigh." (J.A. 235.) The document referred to was the settlement agreement itself, and the reporter was Kirsten B. Mitchell. Ms. Mitchell was separately convicted by the district court of both civil and criminal contempt as a result of her participation in these matters. The Morning Star newspaper was also held in civil contempt. Ms. Mitchell's and the newspaper's consolidated appeals, Ashcraft v. Conoco, Inc., No. 98-1212(L), are being resolved separately.

[4] The United States Attorney subsequently withdrew from the case when the Attorney General of the United States refused to authorize the prosecution, and the district court appointed an independent counsel to prosecute the criminal contempt charges. (J.A. 132-35.)

4

1139 (4th Cir. 1986),**5** the district court found that the sources' identities were not relevant to the civil contempt proceedings then pending and also that Conoco had failed to exhaust all reasonable alternative means for obtaining the sources' names. (J.A. 318.) **6**

On April 13, 1998, Conoco renewed its motion to compel Mr. Reiss to reveal his sources. In arguing that there was a compelling need for the information, Conoco relied entirely on the district court's own alleged interest in learning the sources' identities. (J.A. 346-47.) By order dated September 3, 1998, the district court granted the motion. Again applying the three-part LaRouche test, the district court found, first, that the sources' identities were "relevant to the case in general" and "will help this court determine who violated the [September 22, 1997 confidentiality] order and . . . bring the appropriate sanctions to bear upon that person or persons." (J.A. 369.)**7**

Skipping to the third prong of the LaRouche test, the district court next found that there was a "compelling" need to know the sources' identities. The district court did not find that Conoco had such a need, however. Rather, the court found that the court itself had "several compelling interests in the information." (J.A. 370.)**8** In particular, the court explained that it had "an obligation" to discover the identities

_____

**5** Although in a diversity action the availability of an evidentiary privilege is governed by the law of the forum state, see Fed. R. Evid. 501, here the district court determined that North Carolina courts would apply this court's LaRouche test to the circumstances of this case. (J.A. 368.) Neither party has challenged this determination on appeal

**6** The district court did not in this decision reach the third prong of the LaRouche test, i.e., "whether there is a compelling interest in the information." See 780 F.2d at 1139.

**7** In making this finding, the district court rejected Mr. Reiss' argument that the information sought under LaRouche must be relevant to a claim made by Conoco in the underlying toxic tort case. Instead, the district court took the position that LaRouche "requires that the information be relevant, period, with no modification concerning to which interest it should relate." (J.A. 369.)

**8** The district court interpreted LaRouche to require only that there be a compelling interest in the information, not that the compelling interest belong to the moving party. (J.A. 370.)

5

of the persons who had divulged the $36 million settlement figure and "to hold them accountable for the breach of the seal placed on the Settlement Agreement." (J.A. 370.) The court further explained that it had "withheld a substantial portion of the settlement funds in the event that the sources are plaintiffs" and that the prompt and proper distribution of these funds was "clearly a compelling interest." (J.A. 370-71.)[9]

Finally, the district court found that Conoco had now exhausted all reasonable alternative means for obtaining Mr. Reiss' sources' names.[10] Accordingly, since it found that all three prongs of the LaRouche test were satisfied, on September 3, 1998, the district court ordered Mr. Reiss to supply the full names and addresses of his two anonymous sources. (J.A. 374.) When Mr. Reiss refused to do so, he was found in civil contempt by order dated October 23, 1998, and remanded to the custody of the United States Marshal "until such time as he purges himself of contempt by complying with the terms of the Orders of this Court dated 3 September 1998 and 13 October 1998." (J.A. 411.)[11] On October 28, 1998, this court stayed the district court's contempt order pending the outcome of this appeal.

_____

[9] No specific provision of the settlement agreement authorizing the district court to withhold funds in this manner has been identified or disclosed by either the district court or Conoco.

[10] In the interval between the two rulings, Conoco had sent interrogatories to all adult plaintiffs, and had examined under oath before a magistrate judge five plaintiffs who had indicated that they had spoken to Mr. Reiss in the past. All of the plaintiffs, however, denied supplying Mr. Reiss with the settlement information or knowing who the sources were. (J.A. 366.) Furthermore, in reaching its decision on this prong of the LaRouche test, the district court indicated that, at its own initiative, it had questioned under oath all federal court personnel who might have knowledge of the terms of the settlement agreement and had determined that "none of the [district court] employees were the source of the information." (J.A. 372.)

[11] The district court's October 13, 1998 order denied, inter alia, Mr. Reiss' motion for recusal, and reiterated the court's demand that Mr. Reiss reveal his sources' identities. (J.A. 391.)

6

II.

News reporters are "entitled to some constitutional protection of the confidentiality of [their] sources." Pell v. Procunier, 417 U.S. 817, 834 (1974) (citing Branzburg v. Hayes, 408 U.S. 665 (1972)); see also Branzburg, 408 U.S. at 707 ("news gathering is not without its First Amendment protections"). Such protection is necessary to ensure a free and vital press, without which an open and democratic society would be impossible to maintain. See Time, Inc. v. Hill, 385 U.S. 374, 389 (1967) ("A broadly defined freedom of the press assures the maintenance of our political system and an open society"). If reporters were routinely required to divulge the identities of their sources, the free flow of newsworthy information would be restrained and the public's understanding of important issues and events would be hampered in ways inconsistent with a healthy republic. See Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, 585 (1983) ("An untrammeled press is a vital source of public information, and an informed public is the essence of working democracy") (internal alterations and citation omitted).

Nevertheless, the reporter's privilege recognized by the Supreme Court in Pell and Branzburg is not absolute and will be overcome whenever society's need for the confidential information in question outweighs the intrusion on the reporter's First Amendment interests. See, e.g., Branzburg, 408 U.S. at 690, 708 (holding that reporter, like ordinary citizen, must respond to grand jury subpoenas and answer questions related to criminal conduct he personally observed and wrote about, regardless of any promises of confidentiality he gave to subjects of stories). On a motion to compel disclosure of confidential news sources, this balancing of the reporter's interests and society's interests is committed to the sound discretion of the district court. See Church of Scientology Int'l v. Daniels, 992 F.2d 1329, 1335 (4th Cir. 1993) (citing LaRouche, 780 F.2d at 1139); see also Branzburg, 408 U.S. at 710 (reporter's claim of privilege should be judged on case-by-case basis) (Powell, J., concurring).

In order to guide the district court in balancing these interests, in LaRouche v. National Broadcasting Company, 780 F.2d 1134 (4th Cir. 1986), we adopted the following three-part test: "(1) whether the information is relevant, (2) whether the information can be obtained

7

by alternative means, and (3) whether there is a compelling interest in the information." Id. at 1139 (citing Miller v. Transamerican Press, Inc., 621 F.2d 721, 726 (5th Cir. 1980)). LaRouche involved a defamation action filed by presidential candidate Lyndon LaRouche against NBC and others for statements made during two NBC news programs which LaRouche claimed were defamatory. See 780 F.2d at 1136-37. During discovery, LaRouche moved the district court to compel NBC to reveal the confidential sources for its stories. His motion was denied on the grounds that he had not deposed certain known key persons involved in the stories and so had failed to exhaust other possible sources of the information. On appeal, this court affirmed the district court's ruling on the same reasoning. Id. at 1139. In this case, however, we must focus on the third prong, whether there is a "compelling interest" that justifies the disclosure.

The district court stated in its September 1998 disclosure order that discovering the identities of Mr. Reiss's confidential news sources was relevant to the court's ability to sanction the persons who had violated the court's September 1997 sealing order. (J.A. 369). Under other circumstances, enforcement of a validly entered confidentiality order might well provide a compelling interest. **12** As we have decided in the companion case of Ashcraft v. Conoco, Inc., No. 98-1212(L), however, the sealing order entered in this case is invalid. Under established Fourth Circuit precedent, before a district court may seal any court documents, it must (1) give public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. See In re Knight Pub. Co., 743 F.2d 231, 235-36 (4th Cir. 1984); Stone v. University of Maryland Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1988). In this case, unfortunately, despite the extensive press coverage and significant public interest in the subject of the lawsuit, none

_____

**12** In any case, of course, the compelling nature of the interest in enforcing a sealing order would have to be balanced against the reporter's interest in protecting the confidentiality of his sources. See LaRouche, 780 F.2d at 1139 ("In determining whether the journalist's privilege will protect the source in a given situation, it is necessary for the district court to balance the interests involved.").

8

of the steps mandated by <u>Knight</u> and <u>Stone</u> were followed. Accordingly, the sealing order is invalid. Enforcement of an invalid confidentialty order cannot serve as a compelling interest justifying disclosure of a reporter's confidential sources.

In conclusion, we find that the district court abused its discretion when on September 3, 1998, and October 13, 1998, it ordered Mr. Reiss to disclose the names and addresses of the two individuals who had informed Mr. Reiss about the $36 million settlement figure. It therefore follows that the district court's October 23, 1998 order holding Mr. Reiss in civil contempt for disobeying these orders must be overturned. <u>See McLean v. Central States, Southeast and Southwest Areas Pension Fund</u>, 762 F.2d 1204, 1210 (4th Cir. 1985) ("reversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon"). Accordingly, the judgment of the district court is

<u>REVERSED</u>.