**PUBLISHED**

FILED:  October 15, 2013

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 11-5028
(1:10-cr-00485-LMB-1)
_____

UNITED STATES OF AMERICA

Plaintiff - Appellant

v.

JEFFREY ALEXANDER STERLING

Defendant - Appellee

JAMES RISEN

Intervenor - Appellee

------------------------------

THE THOMAS JEFFERSON CENTER FOR THE PROTECTION OF FREE
EXPRESSION; ABC, INCORPORATED; ADVANCE PUBLICATIONS,
INCORPORATED; ALM MEDIA, INCORPORATED; THE ASSOCIATED PRESS;
BLOOMBERG, L.P.; CABLE NEWS NETWORK, INCORPORATED; CBS
CORPORATION; COX MEDIA GROUP, INC.; DAILY NEWS, L.P.; DOW JONES
AND COMPANY, INCORPORATED; THE E. W. SCRIPPS COMPANY; FIRST
AMENDMENT COALITION; FOX NEWS NETWORK, L.L.C.; GANNETT COMPANY,
INCORPORATED; THE HEARST CORPORATION; THE MCCLATCHY COMPANY;
NATIONAL ASSOCIATION OF BROADCASTERS; NATIONAL PUBLIC RADIO,
INCORPORATED; NBCUNIVERSAL MEDIA, LLC; THE NEW YORK TIMES
COMPANY; NEWSPAPER ASSOCIATION OF AMERICA; THE NEWSWEEK DAILY
BEAST COMPANY LLC; RADIO TELEVISION DIGITAL NEWS ASSOCIATION;
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS; REUTERS AMERICA
LLC; TIME INC.; TRIBUNE COMPANY; THE WASHINGTON POST; WNET

Amici Supporting Intervenor

_____

O R D E R
_____

Petitions for rehearing en banc filed by appellee Sterling and

appellee Risen were circulated to the full court.

No judge requested a poll on Mr. Sterling's petition for rehearing en banc.

On a poll requested and conducted on Mr. Risen's petition for rehearing en banc, Judge Gregory voted in favor of the petition. Chief Judge Traxler, and Judges Niemeyer, Motz, King, Shedd, Duncan, Agee, Davis, Keenan, Wynn, Diaz, Floyd, and Thacker voted against the petition. Judge Wilkinson took no part in the consideration or decision of this case.

The court denies the petitions for rehearing en banc filed by Mr. Sterling and Mr. Risen. Judge King and Judge Keenan filed statements regarding their participation in the case. Judge Gregory filed an opinion dissenting from the denial of rehearing en banc.

For the Court

/s/ Patricia S. Connor, Clerk

KING, Circuit Judge:

I write to briefly explain my decision to participate in the disposition of this petition for rehearing en banc. As my financial disclosure reports reflect, I own stock in Time Warner Inc., the parent company of certain corporate amici supporting intervenor Risen, a prospective prosecution witness. Nevertheless, I have determined that my recusal is not required, in that the outcome of these proceedings cannot substantially affect my financial interest in Time Warner, and I otherwise discern no

reasonable basis to question my impartiality.  See Code of Conduct for U.S. Judges Canon 3(C)(1)(c) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which . . . the judge . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding[.]"); see also Comm. on Codes of Conduct Advisory Op. No. 63 (June 2009) ("[I]f an interest in an amicus would not be substantially affected by the outcome, and if the judge's impartiality might not otherwise reasonably be questioned, stock ownership in an amicus is not per se a disqualification.").

Indeed, I have concluded that my recusal in these circumstances is not only unnecessary, but inadvisable.  Put simply, it could adversely impact our judicial system by inspiring a form of "judge shopping" accomplished by corporate amici being enlisted on the basis of the stock ownership interests of judges. There being no question that they can perform impartially, judges should not be so readily relieved of their solemn obligation to faithfully discharge their duties.


BARBARA MILANO KEENAN, Circuit Judge:

I am participating in the Court's consideration of the petition for rehearing en banc in this matter, despite my ownership of stock in Time Warner, Inc., which owns several companies that are amici in this case.  For the reasons well stated by my good

colleague Judge King, I have concluded that my recusal in this proceeding is neither required nor advisable.

GREGORY, Circuit Judge, dissenting from the denial of en banc rehearing:

> Without debate, without criticism, no Administration and no country can succeed — and no republic can survive. . . .  And that is why our press was protected by the First Amendment — . . . to inform, to arouse, to reflect, to state our dangers and our opportunities, to indicate our crises and our choices, to lead, mold, educate and sometimes even anger public opinion.  . . .  [G]overnment at all levels[] must meet its obligation to provide you with the fullest possible information outside the narrowest limits of national security . . . .  And so it is to the printing press — to the recorder of man's deeds, the keeper of his conscience, the courier of his news — that we look for strength and assistance, confident that with your help man will be what he was born to be:  free and independent.

President John F. Kennedy, The President and the Press, Address before the American Newspaper Publishers Association (April 27, 1961).

We have been called upon in this appeal to decide whether there exists in the criminal context a First Amendment privilege for reporters to decline to identify their confidential sources. Rule 35 provides that we may hear cases en banc in two situations:  when "en banc consideration is necessary to secure or maintain uniformity of the [C]ourt's decisions," or when "the proceeding involves an issue of exceptional importance."  Fed. R. App. P. 35(a).  There can be no doubt that this issue is one of exceptional importance, a fundamental First Amendment question that has not been directly addressed by the Supreme Court or our Sister Circuits.

As noted in my opinion dissenting from the panel's decision on this issue, forty-nine of the fifty United States, as well as the District of Columbia, have recognized some form of reporter's privilege, whether by statute or in case law. See United States v. Sterling, 724 F.3d 482, 532-33 (4th Cir. 2013) (Gregory, J., dissenting as to Issue I). There is not, as yet, a federal statute recognizing a reporter's privilege, but we have recognized such a privilege in the civil context. See, e.g., LaRouche v. Nat'l Broad. Co., 780 F.2d 1134 (4th Cir. 1986).

In the criminal context, the case law is sparse. However, given the speed at which information travels in this Information Age, the global reach of news sources, and the widely publicized increase in federal criminal prosecutions under the Espionage Act, it is impossible to imagine that the issue presented by this case will not come up repeatedly in the future, in every circuit in the country. Courts, prosecutors, and reporters will look to our decision for guidance. Some reporters, including the one in this case, may be imprisoned for failing to reveal their sources, even though the reporters seek only to shed light on the workings of our government in the name of its citizens. That being the case, I voted for the entire Court to give this issue full consideration.

My good colleagues in the majority concluded that the Supreme Court's decision in Branzburg v. Hayes, 408 U.S. 665 (1972), should be read to preclude a reporter's privilege absent a showing of bad faith or harassment on the part of the prosecution. Although I have the greatest respect for their analysis, I must disagree with

their conclusion.  As stated in my dissent, I believe that Justice Powell's concurring opinion in Branzburg limits the scope of that decision, and permits courts to employ, on a case-by-case basis, a balancing test to determine whether the information sought from the reporter is relevant, whether it may be obtained by other means, and whether there is a compelling interest in the information.  Such an approach has been used by this court in the civil context in LaRouche and in United States v. Steelhammer, 539 F.2d 373 (4th Cir. 1976), (Winter, J., dissenting), adopted by the court en banc, 561 F.2d 539 (4th Cir. 1977).  It would be fitting to apply it in the criminal context as well.

By offering reporters protection only when the government acts in bad faith, the majority's rule gives future reporters little more than a broken shield to protect those confidential sources critical to reporting.  For when will the government not have a legitimate interest in the prosecution of its laws?  And in instances where the prosecution itself is pursued in bad faith for the purpose of harassing a member of the press, it asks far too much of the reporter, as a mere witness in a case brought against another individual, to prove as much.  This is especially so given that the majority rejects application of a balancing test wherein the reporter may attempt to show that his testimony is not necessary to securing a conviction.  In practice, then, such protection is no protection at all.

An independent press is as indispensable to liberty as is an independent judiciary.  For public opinion to serve as a meaningful

check on governmental power, the press must be free to report to the people the government's use (or misuse) of that power.  Denying reporters a privilege in the criminal context would be gravely detrimental to our great nation, for "[f]reedom of the press . . . is not an end in itself but a means to the end of a free society." Pennekamp v. Florida, 328 U.S. 331, 354-55 (1946) (Frankfurter, J., concurring).

In light of the exceptional importance of this issue, I must dissent.