GREGORY, Circuit Judge,
dissenting from the denial of en banc rehearing:
Without debate, without criticism, no Administration and no country can succeed — and no republic can survive.... And that is why our press was protected by the First Amendment— ... to inform, to arouse, to reflect, to state our dangers and our opportunities, to indicate our crises and our choices, to lead, mold, educate and sometimes even anger public opinion.... [Government at all levels!] must meet its obligation to provide you with the fullest possible information outside the narrowest limits of national security.... And so it is to the printing press — to the recorder of man’s deeds, the keeper of his conscience, the courier of his news — that we look for strength and assistance, confident that with your help man will be what he was born to be: free and independent.
President John F. Kennedy, The President and the Press, Address before the American Newspaper Publishers Association (April 27,1961).
We have been called upon in this appeal to decide whether there exists in the criminal context a First Amendment privilege for reporters to decline to identify their confidential sources. Rule 35 provides that we may hear cases en banc in two situations: when “en banc consideration is necessary to secure or maintain uniformity of the [C]ourt’s decisions,” or when “the proceeding involves an issue of exceptional importance.” Fed. R.App. P. 35(a). There can be no doubt that this issue is one of exceptional importance, a fundamental First Amendment question that has not been directly addressed by the Supreme Court or our Sister Circuits.
As noted in my opinion dissenting from the panel’s decision on this issue, forty-nine of the fifty United States, as well as the District of Columbia, have recognized *295 some form of reporter’s privilege, whether by statute or in case law. See United States v. Sterling, 724 F.3d 482, 532-33 (4th Cir.2013) (Gregory, J., dissenting as to Issue I). There is not, as yet, a federal statute recognizing a reporter’s privilege, but we have recognized such a privilege in the civil context. See, e.g., LaRouche v. Nat’l Broad. Co., 780 F.2d 1134 (4th Cir.1986).
In the criminal context, the case law is sparse. However, given the speed at which information travels in this Information Age, the global reach of news sources, and the widely publicized increase in federal criminal prosecutions under the Espionage Act, it is impossible to imagine that the issue presented by this case will not come up repeatedly in the future, in every circuit in the country. Courts, prosecutors, and reporters will look to our decision for guidance. Some reporters, including the one in this case, may be imprisoned for failing to reveal their sources, even though the reporters seek only to shed light on the workings of our government in the name of its citizens. That being the case, I voted for the entire Court to give this issue full consideration.
My good colleagues in the majority concluded that the Supreme Court’s decision in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), should be read to preclude a reporter’s privilege absent a showing of bad faith or harassment on the part of the prosecution. Although I have the greatest respect for their analysis, I must disagree with their conclusion. As stated in my dissent, I believe that Justice Powell’s concurring opinion in Branzburg limits the scope of that decision, and permits courts to employ, on a case-by-case basis, a balancing test to determine whether the information sought from the reporter is relevant, whether it may be obtained by other means, and whether there is a compelling interest in the information. Such an approach has been used by this court in the civil context in LaRouche and in United States v. Steelhammer, 539 F.2d 373 (4th Cir.1976), (Winter, J., dissenting), adopted by the court en banc, 561 F.2d 539 (4th Cir.1977). It would be fitting to apply it in the criminal context as well.
By offering reporters protection only when the government acts in bad faith, the majority’s rule gives future reporters little more than a broken shield to protect those confidential sources critical to reporting. For when will the government not have a legitimate interest in the prosecution of its laws? And in instances where the prosecution itself is pursued in bad faith for the purpose of harassing a member of the press, it asks far too much of the reporter, as a mere witness in a case brought against another individual, to prove as much. This is especially so given that the majority rejects application of a balancing test wherein the reporter may attempt to show that his testimony is not necessary to securing a conviction. In practice, then, such protection is no protection at all.
An independent press is as indispensable to liberty as is an independent judiciary. For public opinion to serve as a meaningful check on governmental power, the press must be free to report to the people the government’s use (or misuse) of that power. Denying reporters a privilege in the criminal context would be gravely detrimental to our great nation, for “[fjreedom of the press ... is not an end in itself but a means to the end of a free society.” Pennekamp v. Florida, 328 U.S. 331, 354-55, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946) (Frankfurter, J., concurring).
In light of the exceptional importance of this issue, I must dissent.