CHURCH OF SCIENTOLOGY INTERNATIONAL, Plaintiff–Appellant,

v.

Mitchell DANIELS, Defendant–Appellee.

No. 92–1752.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1993.

Decided May 4, 1993.

---

Jonathan W. Lubell, Morrison, Cohen, Singer & Weinstein, New York City, argued (Arlene R. Smoler, Michael L. Hertzberg, on brief), for plaintiff-appellant.

David Alan Rudlin, Hunton & Williams, Richmond, VA, argued (Thomas G. Slater, Jr., R. Hewitt Pate, on brief), for defendant-appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

In June of 1991, the Church of Scientology International (CSI) ran a series of full page advertisements in USA Today Newspaper. Several of the ads spoke out against the use of drugs for the treatment of mental illness and depression, and targeted in particular the drug Prozac and its manufacturer Eli Lilly & Company. "Eli Lilly: Purveyor of dangerous drugs," read one caption. "What U.S. Drug Company Produced a Drug Named After Adolf Hitler?" asked another. "How much more human misery will occur before Eli Lilly & Company is held accountable for the effects of its dangerous drugs?" queried a third.

Shortly thereafter, CSI and Mitchell Daniels, Vice President of Eli Lilly, wound up in court. Not surprisingly, the issue presented to the court involved the tension between the right of an individual or corporation to protect its reputation and the conflicting right to free speech under the First Amendment. The allegedly defamatory statement at issue, however, was one made not by Church of Scientology International, but by Mitchell Daniels.

Daniels of Eli Lilly had responded to the USA Today advertisements run by CSI attacking the company by requesting an audience with the editorial board at USA Today. The following day the paper quoted him as saying:

> The source of virtually everything you've heard about Prozac has come from the Scientologists, with a boost from trial lawyers whose self-interest is obvious. One thing we want you to understand is that the Church of Scientology is no church. It's a commercial enterprise. Every judge and every investigative journalist who has ever looked at it has come away with that conclusion. It is organized for only one purpose, which is to make money.

CSI brought suit against Daniels in the United States District Court for the Eastern District of Virginia, demanding $50,000 in compensatory damages and $20 million in punitive damages. It claimed that Daniels' quoted statement could be construed as meaning that "every judge" who had ever considered the question had concluded that the Church of Scientology International was "no church," and that such a statement was false and defamatory. Defendant Daniels moved for summary judgment. After hearing oral argument, the district court granted Daniels' motion from the bench on ˙ the grounds that the challenged statement was not defamatory as a matter of law and that plaintiff had failed to present evidence upon which a reasonable jury could find actual malice by clear and convincing evidence. CSI has appealed.

## I.

Appellant CSI contends on appeal that summary judgment was error because a jury could find that the challenged statement prejudiced CSI in the conduct of its religious affairs and thus was defamatory *per se.* Defendant-appellee Daniels advances three reasons why CSI's claim of defamation *per se* is unsupported. First, Daniels contends that his statement was not "of and concerning" the plaintiff. CSI is but one member of a loosely related group of entities that espouse Scientology. The statement, Daniels contends, pertained to the Church of Scientology as a movement and did not target CSI. *See Gazette, Inc. v. Harris,* 229 Va. 1, 37, 325 S.E.2d 713, 738 (1985) (plaintiff must show that the defamatory statement was intended to refer to him and would be so understood by persons reading it who knew him); *Ewell v. Boutwell,* 138 Va. 402, 409, 121 S.E. 912, 915 (1924) (defamatory statement about a large group cannot support a libel action by a member of the group).*

Second, Daniels argues that the statement is not defamatory as a matter of law. The defamatory meaning sued upon by CSI— "every judge has concluded that the Church of Scientology is no church"—is constructed only by leaving out significant portions of the actual quoted statement, he contends. Daniels takes the position that even if the plaintiff's version of the statement is accepted, the statement does not contain, as it must, an "imputation that is 'necessarily hurtful' in its effect upon plaintiff's business and [ ] affect[s] him in his particular trade or occupation." *Fleming v. Moore,* 221 Va. 884, 889–90, 275 S.E.2d 632, 636 (1981) (citations omitted). Daniels points out that under CSI's religious practices, parishioners are required to purchase all services according to a fixed price schedule. Any damages to the reputation of the entity, he contends, would necessarily show up in CSI's financial statements. But CSI has conceded that it has suffered no actual damages. Accordingly, Daniels maintains, the statement could not have been "necessarily hurtful" to the plaintiff's trade or business.

Finally, Daniels argues that CSI has not presented evidence upon which a jury could find actual malice. CSI has admitted that it is a public figure, and as such, it must prove that the defendant published the defamatory statement with actual malice. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (constitutional guarantees require that a public official, in order to recover in defamation, must prove that the statement was a falsehood made with actual malice); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (public figures as well as public officials must prove actual malice to recover for defamation). Daniels contends that he based his statement on a substantial volume of reputable information, and that CSI's allegations of fabrication, purposeful avoidance of the truth, and hostility do not constitute evidence of actual malice (knowing falsity or reckless disregard of the truth) as defined and applied by the Supreme Court.

Because the issue of actual malice is dispositive of the case, we need not decide the questions of whether or not the alleged statement was of and concerning CSI and whether or not it contained an imputation necessarily hurtful to the business of CSI. For pur-

---

* The district judge did not base his ruling on a difference between the exact corporate names of the person bringing suit and the one named in the statement.

poses of the discussion of actual malice, we will assume that a jury could find a defamatory meaning in Daniels' statement, and that a jury could find that the statement was of and concerning CSI. However, we need not and do not so hold. A decision on the issue of defamation as a matter of law would require an extended discussion of whether a reader would construe Daniels' statement as referring to CSI rather than to the entire Scientology movement; whether CSI could derive the defamatory meaning sued upon from an edited version of the actual statement; whether the statement constituted protected opinion, rhetorical hyperbole, or fact capable of being proved true or false; whether an organization such as CSI may claim defamation *per se* and therefore allege no actual damages; and whether the statement was necessarily hurtful to CSI's religious business. Such a discussion would be superfluous to our resolution of CSI's claims.

## II.

■ In order to defeat a motion for summary judgment, a public figure libel plaintiff must present evidence to raise a jury question over whether a defendant published a false and defamatory statement with actual malice. While a plaintiff must meet a "clear and convincing" standard of proof of actual malice, the court must draw all possible inferences in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Defendant Daniels must demonstrate the absence of genuine issues, but with regard to actual malice, an issue on which the plaintiff bears the burden of proof, he may obtain summary judgment if CSI fails to produce evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ Actual malice is defined as either knowledge of falsity or reckless disregard for the truth or falsity of the statement. *New York Times v. Sullivan,* 376 U.S. at 280, 84 S.Ct. at 726. CSI's allegation that Daniels knew of the falsity of his statement derives from Daniels' deposition testimony that he had read two published court opinions before making his comment. CSI claims that nei-

ther opinion supports Daniels' statement and that they in fact directly refute it. The cases, CSI claims, both recognize CSI as a religious institution. Thus when Daniels said that "every judge" had found the Church of Scientology to be "no church," he was deliberately falsifying and concocting wholly untrue accusations. *See Curtis Publishing Co.,* 388 U.S. at 153, 87 S.Ct. at 1990 (deliberate falsification constitutes actual malice); *Hudnall v. Sellner,* 800 F.2d 377, 382 (4th Cir. 1986) (evidence supported finding of actual malice where the legitimate inference drawn from testimony was that defendant "knowingly concocted the accusations out of whole cloth"), *cert. denied,* 479 U.S. 1069, 107 S.Ct. 960, 93 L.Ed.2d 1008 (1987). *See also Zerangue v. TSP Newspapers, Inc.,* 814 F.2d 1066, 1071 (5th Cir.1987) (when acknowledged source of a defamatory statement does not contain the information supposedly derived from it, reckless fabrication can be inferred).

CSI's charge that Daniels had knowledge of the falsity of his statement because he had read two court opinions does not stand up under scrutiny of those opinions. The opinions are susceptible to more than one interpretation as to whether they concluded that the Church of Scientology was a "church"— within the meaning of Daniels' statement—or indeed whether they addressed that question at all. In each case, the issue before the court was whether the Church of Scientology of California conformed to the requirements for tax exempt status under I.R.S. Code § 501. In both cases the courts noted that they accepted the Church's contention that it was organized as a religious institution. *See Church of Scientology v. Commissioner,* 83 T.C. 381, 385 (1984) ("the parties have stipulated that petitioner was organized exclusively for religious purposes.... The Court adopts this stipulation and finds that petitioner was organized to propagate the faith of Scientology, a religion founded by L. Ron Hubbard"); *Church of Scientology v. Commissioner,* 823 F.2d 1310, 1315 (9th Cir.1987) ("Neither the [Tax] Commissioner, nor the Tax Court, nor this court questions that the Church of Scientology of California was organized for a bona fide religious purpose.") Nevertheless, the Tax Court upheld the Tax

Commissioner's determination of tax deficiencies and late filing penalties against the Church of Scientology of California. The Court held that the Church did not qualify for tax exempt status under §§ 501(a) and 501(c)(3) because it was operated for a substantial commercial purpose, its earnings inured to the benefit of its founder, and it violated well-defined standards of public policy.

On appeal, the Ninth Circuit addressed the Church's expressed concern that the Tax Court had failed to recognize it as a bona fide religion. Under the applicable subsection, the court explained, an organization, in order to be exempt, must show that it is both organized and operated exclusively for religious or charitable purposes. The fact that the entity was *organized* for a religious purpose did not end the inquiry. The court went on to uphold the revocation of tax exempt status claimed by the Church on the basis that the entity did not *operate* exclusively for religious or charitable purposes since part of its net earnings inured to the benefit of private individuals. *Church of Scientology*, 823 F.2d at 1315.

A conclusion, based upon those two opinions, that courts had determined that the Church of Scientology was "no church" is perhaps, in legal terms, not wholly accurate. However, CSI's assertion that these two opinions definitively refute Daniels' statement and show that courts have determined that CSI is indeed a bona fide "church," is an equally imprecise conclusion. We point out first that the cases do not involve the Church of Scientology International, but rather the Church of Scientology of California (CSC). Second, church status was not involved. The opinions merely decided that, although CSC had been organized for religious purposes, it did not operate exclusively for religious purposes. A reading of the two judicial opinions, then, fairly permits the conclusion that the courts decided that CSC was a church as well as the conclusion that it was not. While both statements are, speaking in absolute precision, arguably incorrect, neither rises to the level of deliberate falsification. Some slight inaccuracy when describing the background of a case does not equate to deliberate misrepresentation or knowing fabrication.

CSI has emphasized, however, that Daniels, who is a lawyer, stated affirmatively that he had knowledge of what "every judge" who had ever looked at the matter had concluded, when in fact he had read only two court opinions dealing with the religiosity of the Church of Scientology. Numerous other opinions, according to CSI, have recognized Scientology as a religion. CSI has asserted that Daniels made a broad statement without exhaustively researching the subject. His failure to inform himself before making the accusation constituted purposeful avoidance of the truth. Purposeful avoidance of the truth, CSI maintains, has been found evidence of a reckless disregard for the truth, and should be so found here. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692, 109 S.Ct. 2678, 2698, 105 L.Ed.2d 562 (1989).

Daniels testified that before meeting with the editorial board of USA Today and making his statement, he had read, in addition to the two court cases, numerous articles about Scientology published in magazines and newspapers. The articles he reviewed and supplied for the record—some of which received awards for journalistic excellence—came from a wide variety of reputable publications and comprised an impressive collection of research about Scientology. The articles detailed criminal convictions of a number of the Church's leaders for extortion, forgery, breaking into government offices, bugging the IRS building, and planting Scientology agents in drug-control and intelligence agencies of the government. They reported accusations of mind control by ex-churchmembers and members' families, and chronicled the story of an ex-member who sued the organization—and was awarded $30 million—for mental anguish suffered while a member. They discussed the exorbitant rates charged by the Church to its members in exchange for services, "auditing," and training courses designed to facilitate the spiritual quest. The articles related the transformation of the organization from a "precision science," to a form of psychotherapy, to a religion, a transformation variously described as "expedient," "skillful propaganda," and "a sweeping and sophisticated cam-

paign to gain new influence." Many of the articles quoted court opinions. Virtually all of the articles mentioned the lengthy legal battle that the Church of Scientology of California engaged in when it claimed tax-exempt status, the same battle that resulted in the two court opinions previously discussed. The revocation of tax-exempt status was a recognition on the part of the courts, several of these articles reported, that the Church of Scientology had "made a business out of selling religion." *See, e.g., The Scientology Story: Shoring Up its Religious Profile,* Los Angeles Times, June 25, 1990 (quoting *Church of Scientology,* 83 T.C. 381 (1984)).

The issue before us is not whether the Church of Scientology is a legitimate church or whether its image, beliefs, and behavior conform to a mainstream perception of what a church should be. We need not decide whether the court cases revoking the Church's tax-exempt status deny or confer any judicial sanction upon the organization, nor whether the articles that accuse the Church of nefarious motivations are fair or are merely evidence of "a running dog press" and the "forces of evil," as Scientology's former leader Ron Hubbard once stated. Courts have no authority to determine what is or is not a religion, and no legal formula by which to measure the truth or philosophical acceptability of an entity's spiritual beliefs. *See United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 863–64, 13 L.Ed.2d 733 (1965) (the proper judicial task is limited to determining if a claimant's belief's "are sincerely held and whether they are, in his own scheme of things, religious"); *United States v. Lee,* 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982) (courts may not evaluate religious truth). Likewise, journalists—even reputable or prizewinning ones— are not the final arbiters of what constitutes a church and do not always write the gospel truth. Thus, we do not quote the court opinions and articles as evidence of the truth or falsity of Daniels' statement. Rather, we review them as support for Daniels' lack of reckless disregard for the truth or falsity of his statement.

What constitutes reckless disregard for the truth or falsity of a statement, the Supreme Court noted in *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), "cannot be fully encompassed in one infallible definition." *Id.* at 730, 88 S.Ct. at 1325. However, a public figure plaintiff faces a significant burden in proving actual malice. The Supreme Court has made it clear that a "defendant must have made the false publication with a high degree of awareness of ... probable falsity." *Harte–Hanks Communications,* 491 U.S. at 667, 109 S.Ct. at 2685–86 (quoting *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964)). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325–26 (1968). In *Reuber v. Food Chemical News, Inc.,* 925 F.2d 703 (4th Cir.1991) *(en banc )*, we thoroughly discussed the standard of reckless disregard for the truth, and stressed the *Harte–Hanks* requirement that the plaintiff must show that the defendant acted with a high degree of awareness of probable falsity. *Reuber* made it clear that actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices. The case emphasized that the failure to investigate, "where there was no reason to doubt the accuracy of the sources used ... cannot amount to reckless conduct." *Id.* at 716.

■ Given the volume of published commentary on the Church of Scientology reporting the findings of various courts that the Church was not eligible for tax exemption, depicting some of the organization's leaders as unscrupulous or criminal, characterizing the entity as a cult or a money making enterprise, portraying its endeavor to style itself as a religion as misleading and opportunistic—in short, describing the organization in terms that are at odds with a common understanding of what a "church" is—it is impossible to conclude that Daniels entertained serious doubts as to the truth of his statement or spoke with a high degree of probable falsity. His failure to read every court case involving the Church of Scientolo-

gy does not constitute purposeful avoidance of the truth. *See St. Amant,* 390 U.S. at 733, 88 S.Ct. at 1326–27 (1968) (reliance on an unverified affidavit and failure to take steps to investigate did not constitute actual malice where the publisher entertained no serious doubts as to truth of the publication). Moreover, the fact that Daniels couched his statement in terms of what "every judge" had found is not indicative of actual malice. *See Greenbelt Cooperative Publishing Ass'n. v. Bresler,* 398 U.S. 6, 13–14, 90 S.Ct. 1537, 1541–42, 26 L.Ed.2d 6 (1970) (literal inaccuracy in a colloquial or hyperbolic statement is not actionable); *Ryan v. Brooks,* 634 F.2d 726, 733 (4th Cir.1980) (incorrect interpretation of a report or use of stronger language than the source itself used is not proof of actual malice). Finally, CSI's claim that it produced evidence to show that Daniels bore ill will toward CSI does not help its claim. *See Hotchner v. Castillo–Puche,* 551 F.2d 910, 914 (2nd Cir.1977) (ill will or hostility, by itself, does not prove actual malice), *cert. denied sub nom. Hotchner v. Doubleday & Co., Inc.,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977). Accordingly, we hold that CSI has not presented evidence upon which a jury could find, by clear and convincing evidence, that Daniels' statement, if defamatory, was made with actual malice.

### III.

CSI makes an additional complaint that the Magistrate Judge erred in denying it the ability to obtain discovery material from USA Today. Although CSI failed to object to the status of discovery as part of its opposition to summary judgment, it filed a motion to compel production by USA Today of all materials relating to the June editorial board meeting, including editors' notes, tapes, and draft articles.

The Magistrate Judge ruled that CSI failed to make the required showing for a need for the privileged materials, a ruling that is reviewable only for abuse of discretion. *See La Rouche v. National Broadcasting Co.,* 780 F.2d 1134, 1139 (4th Cir.), *cert. denied,* 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986) (in determining whether a journalist's privilege will protect the source,

a court must balance whether information is relevant, can be obtained by other means and whether there is a compelling interest in the information; determination is committed to the discretion of the district court). Nothing in the record shows that there was an abuse of discretion in the denial of discovery of the materials. In fact, the consideration that Daniels offered to stipulate to the accuracy of the quotation that appeared in USA Today makes the relevance of the materials CSI seeks questionable, rather than critical to the case, as the law requires. *See id.* 780 F.2d at 1139 (the fact that the plaintiff already knew the names of sources made need for information less than compelling). Although Daniels has stated that he does not recall the exact wording of the statement at the editorial board meeting, the statement being sued upon is that which ran in the paper—not that which was made to the board. Moreover, the Magistrate Judge correctly observed that CSI had made no effort to pursue alternative sources of information concerning the meeting. In short, the Magistrate Judge did not err in refusing to permit additional discovery of privileged material from USA Today.

The judgment is accordingly

AFFIRMED.