**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHAMEEM NOEL RASSAM,
Plaintiff-Appellee,

v.

OSAMA FAWZI YOUSEF, a/k/a Osama
Fawzi,

No. 93-1960

Defendant-Appellant,

and

ARAB HOUSTON TIMES CORPORATION;
ALLAA KASEM,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-92-1527-A)

Submitted: November 29, 1994

Decided: August 7, 1996

Before HALL and LUTTIG, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Osama Fawzi Yousef, Appellant Pro Se. Joseph Peter Drennan, Alex-
andria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Following a jury trial, Shameem Noel Rassam, a former radio and television personality from Iraq living in Virginia, was awarded $9000 in compensatory damages and $150,000 in punitive damages from Arab Houston Times Corp. and Osama Fawzi Yousef ("Fawzi"), for statements Defendants published in Houston Arab Times--The International Newspaper of Arabs ("Arab Times"). Fawzi appeals, contending that there was insufficient evidence to support the jury's verdict, the damages award was excessive, and the trial judge's conduct deprived him of a fair trial. For the reasons stated below, we affirm in part, vacate in part, and remand.

In June 1992, Rassam served as a promoter and the emcee of a fundraiser to benefit "Iraqi orphans and other young victims of the Gulf War." The gala lost money, so none went to the intended beneficiaries. In August 1992, Arab Times published an allegedly anonymous letter to the editor stating that Rassam had embezzled money from the gala benefit for personal use. Rassam filed this action against Arab Houston Times Corp., the publisher of Arab Times , and Osama Fawzi Yousef, the editor-in-chief of Arab Times, **1** alleging common law libel and the statutory tort of insulting words, Va. Code Ann. § 8.01-45 (Michie 1992), and demanding a retraction of the letter. Defendants refused to print a retraction. Instead, in December 1992, the paper printed an editorial about the lawsuit, claiming that Rassam's translator lied by mistranslating the August 1992 letter. In January 1993, the paper published an editorial stating that "[t]he Iraqi announcer Shameem Rassam claim [sic] that she was exposed to harassment from Iraqi Intelligence while the rumors says [sic] that she is, pardon me, a member of the House, and the whole story is a joke." Rassam

_____

**1** Initially, Rassam also sued Allaa Kasem, but she later dismissed the claims against this Defendant.

2

amended her complaint to include claims for these statements, arguing that the December 1992 editorial accused her of paying a translator to lie under oath and that the January 1993 editorial linked her to Iraqi Intelligence.

The case proceeded to a jury trial. Through an Arabic language expert and other witnesses, Rassam presented translations of the alleged libelous statements. She also presented evidence that she neither earned nor took money from the gala, that she was not affiliated with Iraqi Intelligence, and that the materials published in Arab Times hurt her reputation. The organizer of the gala testified that no one at Arab Times ever contacted him concerning Rassam or her involvement in the gala.

Rassam's attorney called Fawzi as a witness. Fawzi first testified that he never verified the claims asserted in the anonymous letter that accused Rassam of misappropriating the gala funds; he claimed that it was written by an Iraqi who would not give his real name for fear of reprisal by the Iraqi government. Then, on examination of his own attorney, Fawzi testified that he asked for and received documentation from the letter writer supporting the allegations in the letter. He denied that the August 1992 letter called Rassam a thief, claiming instead that the letter said that the gala funds had been mishandled and that Rassam and the gala organizer spent the proceeds on themselves. He asserted that the word "liss," an Arabic word used to describe Rassam in the August 1992 letter, had many meanings, only one of which was "thief," and that it had not been used in that context.

Fawzi testified that in the December 1992 editorial, he did not accuse Rassam of paying the translator to lie under oath about the translation of the August 1992 letter. He admitted stating that the translator had lied about the translation. Fawzi also denied accusing Rassam of being affiliated with Iraqi Intelligence, claiming that his January 1993 editorial merely expressed his surprise at Rassam's claim that Iraqi Intelligence in Washington threatened her because he had not realized Iraqi Intelligence had a presence in Washington. Fawzi conceded that he had no evidence that Rassam was involved with Iraqi Intelligence.

Defendants called as a witness an American originally from Iraq, who wrote periodically for Arab Times. He testified that the letter

3

published in August 1992 merely said that Rassam mismanaged the gala proceeds and that the letter did not change his good opinion about her. The court directed that the insulting words counts be merged with the libel counts. The jury entered judgment for Rassam, awarding her $3000 in compensatory damages and $50,000 in punitive damages for each of the statements published in Arab Times in August 1992, December 1992, and January 1993, for a total of $9000 in compensatory damages and $150,000 in punitive damages.

I. Jury Verdict

Fawzi contends on appeal that the evidence was insufficient to support the jury's verdict. In Virginia, the elements of libel are (1) publication (2) of an actionable statement (3) with the requisite intent. See generally, Gazette, Inc. v. Harris, 325 S.E.2d 713 (Va.), cert. denied, 472 U.S. 1032 (1985). To be "actionable," the statement must not only be false, but also "defamatory," in that it must "tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977); see Harris, 325 S.E.2d at 731.

By her own admission, Rassam is a public figure. To recover damages for libel, a public figure must show actual malice. Reuber v. Food Chemical News, Inc., 925 F.2d 703, 708 (4th Cir.), cert. denied, 501 U.S. 1212 (1991). "Actual malice is defined as either knowledge of falsity or reckless disregard for the truth or falsity of the statement." Church of Scientology Internat'l v. Daniels, 992 F.2d 1329, 1332 (4th Cir. 1993). Consequently, the jury's verdict may be upheld only if the evidence shows with convincing clarity that Fawzi knew that the statements he published about Rassam were false or that he recklessly disregarded the truth or falsity of those statements. Reuber, 925 F.2d at 714. Reckless disregard for the truth amounts to actual malice if the evidence supports a conclusion that the defendant actually had doubts about the veracity of the published statements. The failure to investigate a source does not amount to actual malice if there was no reason to doubt the accuracy of the source. Daniels, 992 F.2d at 1334.

We find that a preponderance of the evidence supported the jury's finding that the August 1992 letter was published and was false and

4

defamatory because it asserted that Rassam had embezzled money from a charity. We find further that Rassam showed actual malice with convincing clarity. Rassam presented evidence that Defendants never contacted her or anyone associated with the gala before publishing the offending letter. Fawzi first claimed that he never verified the statements in the letter, but then said that he was contacted by the anonymous letter writer who said the statements were true, but who refused to give his name for fear of reprisal by the Iraqi government. When Rassam first filed her lawsuit and demanded a retraction of the letter, Defendants responded by publishing further inflammatory statements about her. Consequently, the jury reasonably could conclude that Rassam's evidence was more credible than Defendants' evidence and that Rassam's evidence was sufficient to demonstrate actual malice with convincing clarity.

As for the December 1992 editorial, however, we find that there was not sufficient evidence to support the jury's verdict. Rassam claims she was libelled because the editorial said that she paid a translator to lie under oath about the translation of the August 1992 letter. In fact, however, based on Rassam's expert's translation, the article accused the translator of lying--it made no claim that Rassam was responsible for the alleged mistranslation. Rassam failed to show that the publication was defamatory because, while it might harm the translator's reputation, it would not harm hers. In fact, Rassam presented no evidence that her reputation was harmed by the December 1992 editorial.

Similarly, Rassam failed to show that the January 1993 editorial libelled her by linking her to Iraqi Intelligence. Rassam denied, and Fawzi admitted that he had no evidence that she had any such associations; however, Fawzi claimed that his editorial made no such accusations. A reasonable reading of Rassam's translation of the editorial in fact shows that the publication merely said that there were rumors that Rassam was associated with Iraqi Intelligence. Saying that there were rumors of an association with Iraqi Intelligence is different from saying that Rassam actually was affiliated with this organization. Rassam presented no evidence disputing that such a rumor existed. Furthermore, Rassam presented no evidence that her reputation was harmed because people believed she was involved with Iraqi Intelligence due to the editorial. We find that Rassam failed to show that the article

5

defamed her, much less that Defendants published it with actual malice.

II. Excessive Damages

Fawzi contends that the damages award was excessive. Because Rassam failed to meet the burden of proof for libel regarding the December 1992 and January 1993 editorials, she was not entitled to damages for these claims. Consequently, we consider only whether the jury awarded excessive damages for the August 1992 letter.

Where a plaintiff must prove actual malice to recover damages in a libel action, "an appellate court has an obligation to make an independent examination of the entire record in order to insure that the judgment of the trial court does not constitute a forbidden intrusion on the exercise of free expression." The Gazette, 325 S.E.2d at 727. Thus, to uphold the award of compensatory or punitive damages, the appellate court must find clear and convincing evidence of actual malice. Id. "Where a punitive award is substantially in excess of what ordinarily might be expected as punishment for the particular conduct, the reviewing court has a duty to annul the award unless the circumstances are so egregious as to constitute a sufficient punishment for the wrongful activity." Id. at 746. Finally, this Court has held that under Virginia law, punitive damages must be proportional to the compensatory damages award, must not give the plaintiff a double recovery, and must be awarded only after consideration of the effect of the award on the defendant. Johnson v. Hugo's Skateway, 974 F.2d 1408, 1418 (4th Cir. 1992).

The judge's instructions to the jury on punitive damages embodied these standards. The jury awarded Rassam $3000 in compensatory damages and $50,000 in punitive damages for the August 1992 letter accusing her of misappropriating the funds from the benefit gala.

As stated above, there was clear and convincing evidence of actual malice concerning the August 1992 letter. People called Rassam a thief after the letter was published, the accusation published in the paper was false, Rassam received disturbing calls and stopped going out in public, Defendants never checked with anyone associated with the gala to confirm the letter's accusation, and after the lawsuit was

6

filed and Rassam demanded a retraction, Defendants instead published additional inflammatory remarks about her. Fawzi testified that the retail price of Arab Times was one dollar per issue and that the paper had a typical circulation of about 9000 copies, but sometimes published up to 50,000 copies per issue. The jury's $50,000 punitive damages award could have reflected the maximum gross income Arab Times could have received for the August 1992 issue containing the libellous statements, namely $50,000 reflecting the sale of 50,000 copies of the August 1992 issue at one dollar per copy. We find that neither the $3000 compensatory damages award nor the $50,000 punitive damages award for the August 1992 letter was excessive.

III. Judicial Misconduct

Fawzi also complains that he was denied a fair trial because the trial judge's conduct demonstrated partiality. Specifically, he charges that the judge improperly questioned witnesses and allowed only portions of a deposition of an unavailable witness [2] to be read into evidence.

Rule 614(b) of the Federal Rules of Evidence allows a court to "interrogate witnesses, whether called by itself or by a party." See also Glasser v. United States, 315 U.S. 60, 82 (1942); United States v. Seeright, 978 F.2d 842, 847 (4th Cir. 1992). This Court has described the trial judge's duties as follows:

> [T]he role of the district judge . . . is "not that of an umpire or of a moderator at a town meeting. He sits to see that justice is done in the cases before him; and it is his duty to see that a case on trial is presented in such way as to be understood by the jury, as well as by himself. He should not hesitate to ask questions for the purpose of developing the facts;

_____

[2] Defendants subpoenaed Saba Shami, a friend of Rassam's attorney, to testify, but he did not appear. Rassam's counsel's private investigator discovered that Shami was actually in town but had not appeared in accordance with the subpoena. The court allowed Defendants to have portions of Shami's deposition, selected by Defendants' counsel, read into evidence.

7

> and it is no ground of complaint that the facts so developed
> may hurt or help one side or the other."

United States v. Parodi, 703 F.2d 768, 775 (4th Cir. 1983) (quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694 (1941)). If, however, a trial judge's questions or comments are so prejudicial that they deprive a defendant of a fair trial, as opposed to a perfect trial, then the defendant is entitled to a new trial. Parodi, 703 F.2d at 776. To decide whether such abuses have occurred, the appellate court must look not only at the challenged questions, but also at the judge's demeanor and conduct "throughout the trial, to search the record for evidence of partiality or bias that might indicate a belief on the judge's part that the defendant[ ] [was] `guilty' or suggest that he had usurped the function of prosecutor." Id. We reviewed the record with these standards in mind and conclude that the district court did not exceed its discretion in questioning the witnesses.

Finally, although on appeal Fawzi complains that the trial court should have allowed Shami's entire deposition to be read into the record, Defendants' counsel was able to introduce the portions of the transcript he deemed important and there is no evidence that the out-come of the trial would have been different had the entire deposition been read. Consequently, we find that there was no judicial miscon-duct in this case.

Conclusion

For these reasons, we affirm the portion of the district court's order upholding the jury's verdict and the damages awarded to Rassam for the August 1992 letter, but vacate the portion of the order upholding the jury's finding of libel and award of damages as to the December 1992 and January 1993 editorials and remand for an entry of judg-ment reflecting these changes. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

8