**Jerry HADE, Plaintiff**

v.

**CITY OF FREMONT, et al., Defendants.**

**No. 3:01CV7632.**

United States District Court, N.D. Ohio, Western Division.

Oct. 18, 2002.

Catherine H. Killam, Paul T. Belazis, R. Michael Frank, R. Kevin Greenfield, Nathan & Arnold, Toledo, OH, for Plaintiff.

Joan C. Szuberla, Teresa L. Grigsby, Theodore M. Rowen, Terry Overmeyer, In his Official Capacity as Mayor of the City of Fremont, Ohio, Spengler Nathanson, Toledo, OH, for Defendants.

William F. Kolis, Jr., Yena Peach Hart, Wickens, Herzer, Panza, Cook & Batista, Avon, OH, for The News–Messener.

## ORDER

CARR, District Judge.

This is a civil rights suit by a former municipal employee against his former employer, the City of Fremont, Ohio, and its Mayor, Terry Overmeyer. Pending is a motion by a local newspaper, the News–Messenger, to quash a subpoena duces tecum served on one of its employees, Yena Peach Hart. (Doc. 17). The subpoena directs Ms. Hart to attend a deposition and to bring with her any notes related to interviews conducted in connection with articles authored by her and published in the News–Messenger. The articles contain statements attributed to Mayor Overmeyer and other City officials involved in the events leading to plaintiff's loss of his position as Superintendent of the Fremont Water Treatment Plant.

In addition, plaintiff has filed a motion for leave to file an amended complaint. (Doc. 16). That motion is unopposed and will be granted.

For the reasons that follow, the motion to quash shall be denied.

Plaintiff worked for the City from September, 1972, until August 6, 2001, when he was notified that he was fired. About three weeks earlier, on July 12, 2001, a complaint had been filed with the Fremont Police Department on behalf of a female consultant who had been with the plaintiff shortly before the filing of the complaint. On July 17, 2001, the City's Safety Services Director, Kenneth A. Myers, notified plaintiff that he was being placed on administrative leave with pay.

On August 4, 2001, the News–Messenger published an article entitled "Fremont officials investigating complaint against city dept. head." The article reported that an investigation was being conducted about allegations of "improper advances" at the water filtration plant. Quoted statements about the investigation were attributed to Mayor Overmeyer and Capt. Sam Derr of the Fremont Police Department. The nature of the underlying allegations was not disclosed, though the article indicated that prosecutors had been consulted.

On August 6, 2001, plaintiff and his attorney met with Mayor Overmeyer, City Law Director Director Robert Hart (no relation to the reporter, Ms. Hart), and Director Myers. Plaintiff was notified that he was being fired. The Mayor signed and issued a letter to the plaintiff, through his attorney, confirming plaintiff's termination, and stating that it was due, in part, to failure to cooperate with the City's investigation.

Before plaintiff's attorney delivered the Mayor's letter to the plaintiff, he was contacted by Ms. Hart. Her questions to the attorney led him to believe that she possessed a copy of the letter that had been given to him for delivery to the plaintiff, to whom no other copy was being sent.

The following day, August 7, 2001, the News–Messenger published an article entitled "Mayor fires city water boss." Containing quotations attributed to Mayor Overmeyer, Captain Derr, and plaintiff's counsel, the article reported that plaintiff had been fired after failing to cooperate with a City investigation into a report of a sexually related incident. The article also quoted from the Mayor's August 6th termination letter to the plaintiff. The article also indicated that the matter had been referred to the prosecutor's office, and referenced the possibility that criminal charges might be brought.

Plaintiff's suit alleges wrongful termination and the failure to provide a name clearing hearing. Plaintiff has deposed the officials quoted in the two newspaper articles. They have denied initiating contact with the paper and providing it with documents, including the termination letter referenced in the second article. Plaintiff's complaint seeks a name clearing hearing and compensatory and punitive damages.

Plaintiff wants to depose Ms. Hart to confirm what information she received from the City and when and how it was supplied. The movants contend that such information, which movants have not publicly disclosed, is innate to the news gathering process and thus entitled to protection under the First Amendment. Movants also assert that the information is of questionable relevancy and is not an essential component of plaintiff's proof of his claims against the defendants.

## Discussion

This case does not involve an effort to protect the confidentiality of Ms. Hart's sources, who were identified and quoted in her articles. Plaintiff seeks, rather, to learn what other information, not reported in the articles, was provided by those sources to Ms. Hart. He also wants to learn whether any of sources initiated contact with Ms. Hart, contrary to their denials in their depositions that they did so.

The movant's opposition to the proposed deposition and disclosure of unpublished information is based on the privilege, extended by many courts, that protects reporters and editors against compelled disclosure of their sources. That privilege is rooted in Justice Powell's concurrence in *Branzburg v. Hayes,* 408 U.S. 665, 710, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972):

> If a newsman believes that the grand jury investigation is not being conducted

in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

In light of this statement, a majority of the circuits has accepted the proposition that news media employees have a qualified privilege to refuse to disclose confidential sources of information acquired during the news gathering process. *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993); *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 595–96 (1st Cir. 1980); *United States v. Burke*, 700 F.2d 70, 77 (2d Cir.1983); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980); *LaRouche v. National Broadcasting Co.*, 780 F.2d 1134, 1139 (4th Cir.1986); *Miller v. Transamerican Press*, 621 F.2d 721, 725 (5th Cir.1980); *Cervantes v. Time, Inc.*, 464 F.2d 986, 992–93 (8th Cir.1972); *Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433, 436–37 (10th Cir.1977); *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C.Cir.1981) Thus far, only the Sixth Circuit has refused to acknowledge such privilege. *In re Grand Jury Proceedings*, 810 F.2d 580, 584–85 (6th Cir.1987).

In *Grand Jury* the Sixth Circuit rejected a cameraman's invocation of privilege in response to a subpoena to provide film of interviews with gang members. In reaching this result, the court pointed out that the majority in *Branzburg* had rejected a reporter's claim that he could not be compelled to disclose his sources before a grand jury. The court in *Grand Jury* refused to "restructure", "rewrit[e]", or "superimpose[ ]" Justice Powell's concurrence on the majority opinion in *Branzburg* to find that that case had created the privilege on which the cameraman relied.

Although the court in *Grand Jury* unequivocally rejected the cameraman's invocation of privilege, it endorsed a balancing approach to demands for disclosure of sources:

> [C]ourts should, . . ., follow the admonition of the majority in *Branzburg* to make certain that the proper balance is struck between freedom of the press and the obligation of all citizens to give relevant testimony, by determining whether the reporter is being harassed in order to disrupt his relationship with confidential news sources, whether the grand jury's investigation is being conducted in good faith, whether the information sought bears more than a remote and tenuous relationship to the subject of the investigation, and whether a legitimate law enforcement need will be served by forced disclosure of the confidential source relationship.

*Id.* at 586.

Movants point out that *Grand Jury* involved a grand jury subpoena, while this case is a civil action. Some courts distinguish between civil and criminal proceedings when allowing a claim of privilege, holding that, because there is little or no public interest in the outcome of civil litigation, privilege claims should more readily be accepted in civil cases. *See United States v. Smith*, 135 F.3d 963, 971 (5th Cir.1998); *Zerilli v. Smith*, 656 F.2d 705,

711 (D.C.Cir.1981) ("Although *Branzburg* may limit the scope of the reporter's First Amendment privilege in criminal proceedings, this circuit has previously held that in civil cases, where the public interest in effective criminal law enforcement is absent, that case is not controlling.").

The perceived distinction between what is at stake in civil and criminal cases was noted in *Southwell v. Southern Poverty Law Center*, 949 F.Supp. 1303 (W.D.Mich. 1996), in which the court, *Grand Jury* notwithstanding, upheld a claim of privilege. The court in *Southwell* also sought to avoid the mandate of *Grand Jury* by suggesting that its rejection of the claim of privilege was dictum. *Id.* at 1311.

I disagree with the characterization of the Sixth Circuit's rejection of the claim of privilege in *Grand Jury* as dictum. The court expressed the result it reached, and its ruling in the following language:

> Accordingly, we decline to join some other circuit courts, to the extent that they have stated their contrary belief that those predicates do exist, and have thereupon adopted the qualified privilege balancing process urged by the three Branzburg dissenters and rejected by the majority.... We conclude, therefore, that the district court correctly dismissed Stone's claim that his custody would be in violation of the first amendment to the United States Constitution.

810 F.2d at 584–85.

This is a ruling, not merely an ancillary or collateral comment with no authoritative bearing on or relationship to the court's result. The Sixth Circuit's decision in *Grand Jury*, though a minority of one, is the law in this circuit.

■ Applying the less demanding balancing test prescribed in *Grand Jury*, I conclude that the motion to quash should be overruled. There is no suggestion that Ms. Hart is being harassed, or that her ability otherwise to investigate and write other stories will be impaired. Plaintiff is not embarked on a fishing expedition; he does want to cast about in Ms. Hart's files without limit or restriction. Nor is he trying to disrupt or curtail a current or continuing inquiry. The plaintiff's request is made in good faith.

The information he seeks has considerably more than a remote and tenuous relationship to the subject of his lawsuit. He demands punitive damages. Malice is an element of such claim. *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987) (syllabus). As to that claim, at least, who contacted whom in the process leading to publication of allegedly stigmatizing information is of more than modest evidentiary significance. Under the standard recited in *Grand Jury*, plaintiff is entitled to depose Ms. Hart.

Even if the Sixth Circuit agreed with the majority with regard to a reporter's privilege, the result would be the same. This is particularly so in light of the fact that what plaintiff seeks is not the identity of sources but unpublished information.

While the other circuits agree that a privilege exists with regard to sources, they split on the applicability of the privilege to unpublished information. *See generally* Note, *The Recognition of a Qualified Privilege for Non–Confidential Journalistic Materials: Good Intentions, Bad Law*, 65 Brook. L.Rev. 369, 369 (1999); Anthony L. Fargo, *Reconsidering Federal Journalists' Privilege for Non–Confidential Informatin: Gonzales v. NBC*, 19 Cardozo Arts & Ent. L.J. 355 (2001); Anno., *Reportorial Privilege as to Nonconfidential News Information*, 60 A.L.R.5th 75 (1998).

Some courts extend no privilege or protection to unpublished information obtained from known sources. *See, e.g., United States v. Smith*, 135 F.3d 963, 972 (5th Cir.1998) ("newsreporters enjoy no

qualified privilege not to disclose nonconfidential information in criminal cases."); *United States v. LaRouche Campaign,* 841 F.2d 1176, 1182 (1st Cir.1988); *United States v. Hively,* 202 F.Supp.2d 886, 892 (E.D.Ark.2002) ("this Court declines to recognize any constitutional privilege concerning the nonconfidential testimony sought by the defense. The issue becomes strictly one of relevance."); *De La Paz v. Henry's Diner,* 946 F.Supp. 484, 485 (N.D.Tex.1996); *United States v. Jennings,* 1999 WL 438984, *2 (N.D.Ill., June 21, 1999).

Other courts allow a claim of privilege with regard to unpublished information. *See, e.g., Gonzales v. National Broadcasting Co., Inc.,* 194 F.3d 29, 35–36 (2nd Cir.1999); *Shoen v. Shoen,* 5 F.3d 1289, 1296 (9th Cir.1993); *Church of Scientology International v. Daniels,* 992 F.2d 1329, 1335 (4th Cir.1993); *Cuthbertson, supra,* 630 F.2d at 147. In *Gonzales,* the Second Circuit concluded, however, that the privilege for unpublished materials is lesser than the privilege for confidential sources:

> [T]he qualified privilege for journalists applies to nonconfidential, as well as to confidential, information. However, it is important to recognize that, where the protection of confidential sources is not involved, the nature of the press interest protected by the privilege is narrower. *Cf. Shoen v. Shoen,* 5 F.3d 1289, 1295–96 (9th Cir.1993) (reasoning that " 'the lack of a confidential source may be an important element in balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case' ") (quoting *United States v. Cuthbertson,* 630 F.2d 139, 147 (3d Cir.1980)). The stringent test we enunciated in *Petroleum Products [Antitrust Litig.,* 680 F.2d 5, 7 (2d Cir. 1982) ], for overcoming the qualified privilege was designed "to protect … the confidentiality of journalists'

sources." 680 F.2d at 7. We believe that when protection of confidentiality is not at stake, the privilege should be more easily overcome. Accordingly, we now hold that, while nonconfidential press materials are protected by a qualified privilege, the showing needed to overcome the privilege is less demanding than the showing required where confidential materials are sought. Where a civil litigant seeks nonconfidential materials from a nonparty press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources.

194 F.3d at 35–36.

If the Sixth Circuit were to join the majority, and conclude that the First Amendment affords a qualified privilege to reporters, at least in civil cases, and if it were further to conclude that such privilege extended to unpublished materials, it is most likely, in my view, that it would adopt the balancing approach prescribed in *Gonzales.* Under that approach, the subpoena should be quashed if plaintiff "can show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.* at 36.

The issue of punitive damages is a significant issue. The information plaintiff seeks is not available from anyone or anywhere else. He has exhausted the only other avenue that could lead to such or similar information by deposing the officials who provided information to Ms. Hart. He has nowhere else to look, particularly in view of their denial that they volunteered information or materials to her. Plaintiff, even if the Sixth Circuit law

was other than it is, has met his burden of overcoming the motion to quash.

## Conclusion

In the only case decided by the Sixth Circuit, the court made clear that, in its view, there is no First Amendment privilege that protects reporters from being compelled to disclose their confidential sources. At most, a court in our circuit is to make certain that the reporter is not being harassed, the party seeking the information is acting in good faith, the information bears more than a remote and tenuous relationship to the subject of the suit, and that legitimate needs will be served by disclosure. *Grand Jury, supra,* 810 F.2d at 586. Under this standard, the movants are not entitled to relief.

Even if the Sixth Circuit were in line with the other circuits, and even if it provided some protection to unpublished materials, I am persuaded that the standard outlined by the Second Circuit in *Gonzales* would be as far as our circuit would go. Applying that standard in this case, the information sought is of likely relevance and can be obtained from no one and nowhere else.

It is, therefore,

ORDERED THAT

1. Plaintiff's motion for leave to amend (Doc. 16) be, and the same hereby is granted; and

2. Movants' motion to quash (Doc. 17) be, and the same hereby is denied.

So ordered.